UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RONALD HOPKINS, JERRY MAGAÑA, SETH MARTINDALE, ANDREW MOLLOY, JAY NAGIMON, NEELIMA PANCHANG, SAILESH PANCHANG, PATRICK PERGER JR., JANE ROSSETTI, AMBER TERRELL, GWENDOLYN WRIGHT, ELIZABETH ZAWACKI, and AYAL BRENNER, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>CAPITAL ONE, N.A. and CAPITAL ONE FINANCIAL CORP.,<br><br>               Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Ronald Hopkins, Jerry Magaña, Seth Martindale, Andrew Molloy, Jay

Nagimon, Neelima Panchang, Sailesh Panchang, Patrick Perger Jr., Jane Rossetti, Amber Terrell,

Gwendolyn Wright, Elizabeth Zawacki, and Ayal Brenner (collectively "Plaintiffs"), on behalf

of themselves and all others similarly situated, by and through their counsel, bring this Class

Action Complaint ("Complaint") against Defendants Capital One, N.A. ("CONA") and Capital

One Financial Corp. ("COFC") (collectively "Capital One" or "Defendants"), and based upon

personal knowledge with respect to themselves, and on information and belief and the

investigation of counsel as to all other matters, in support thereof allege as follows:

## NATURE OF THE ACTION

1.       Plaintiffs bring this case as a related action to *Savett v. Capital One, N.A. and*

*Capital One Financial Corp.*, Case No. 1:23-cv-00890-RDA-JFA (E.D. Va.), to bring to the

Court's attention the scale of Capital One's deceptive, unfair, and bad faith conduct. On January

21, 2024, following the filing of the *Savett* case, an article appeared in The Wall Street Journal that described Capital One's deceptive scheme to cheat its 360 Savings accountholders out of good-faith interest payments.[1] Since then, over a hundred 360 Savings accountholders from across the country have reached out to Plaintiffs' counsel.

2.      To summarize, Capital One furtively created a duplicate savings account with a similar name, "360 Performance Savings," with no notice to existing customers, and then hid the old account, "360 Savings," by scrubbing it from its website, in the hopes that customers would not realize that they were not being paid the high interest rates previously promised to them. The only explanation for Capital One's deceptive conduct is the bad faith desire to cheat customers out of interest payments. No rational person would maintain an otherwise identical account that paid materially lower interest absent Capital One's wrongful conduct.

3.      Capital One's conduct is deceptive, unfair, and done in bad faith, and is not authorized by its deposit taking powers under the National Bank Act, because state laws regarding contracts and torts generally "are not preempted." 12 C.F.R. § 7.4007(c). The United States Office of the Comptroller of the Currency has warned that "[u]nfair or deceptive acts or practices are unlawful under federal and State law," and that the "consequences of engaging in practices that may be unfair or deceptive under federal or state law can include litigation, enforcement actions, monetary judgments, and harm to the institution's reputation." OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 OCC CB LEXIS 16, *2, *5 (Mar. 22, 2002). The OCC has cautioned banks to "ensure that customers receiving the information can reasonably be expected to understand the information about products or

---

[1] Rachel Louise Ensign, *They Thought Their Money Was in High-Interest Accounts—They Got Paid Peanuts*, WALL ST. J., Jan. 21, 2024.

services—including any material limitations—without having to do 'detective' work." *Id.* at *14-15. As explained herein, Capital One has ignored this guidance.

4.    Plaintiffs bring this case on behalf of themselves and all others who have been Capital One "360 Savings" accountholders since Capital One created the "360 Performance Savings" account. Plaintiffs seek to represent subclasses from the states of California, Texas, New York, New Jersey, Florida, North Carolina, Virginia, and Maryland.

5.    Since February 2013, Capital One has maintained an online savings account for depositors called "360 Savings." This savings account is the successor to the high-yield online savings account that had been offered by ING Direct USA, which Capital One acquired in 2012. Plaintiffs each had ING Direct online savings accounts that were converted into a Capital One 360 Savings accounts as of February 1, 2013.

6.    From February 1, 2013 until on or about September 16, 2019, Capital One offered the 360 Savings account to members of the general public, and advertised the 360 Savings account as a "high-interest" and "great rate" savings account, consistent with how ING Direct USA had positioned the product. The rate paid on the 360 Savings account as of September 16, 2019 was 1.00%.

7.    In mid-September 2019, Capital One abruptly dropped references to the 360 Savings account from its website and simultaneously introduced a new online savings account with an almost identical name: "360 Performance Savings," which was advertised as a "high-yield" online savings account. From the moment it was created, this new 360 Performance Savings account featured a higher interest rate (1.90% APY as of September 2019) than the 360 Savings account (1.00% APY at that same time). There were, and are, no material differences between these two accounts other than the interest rate.

8.      Although Capital One ceased offering the 360 Savings account to new depositors, it has continued to maintain that account for preexisting 360 Savings accountholders, with a materially lower interest rate. Capital One did not notify its 360 Savings accountholders that the 360 Performance Savings account was available, that 360 Performance Savings was, in fact, a different account and not just another name for the 360 Savings account, or that 360 Performance Savings paid a higher rate of interest than the 360 Savings account. Instead, Capital One left its 360 Savings accountholders in a lower-yield account and hoped that they would not notice.

9.      Starting in March 2020, in response to the pandemic, the Federal Reserve lowered the federal funds rate to zero, and interest rates decreased throughout the economy. As of December 2020, the rate paid on 360 Performance Savings had fallen to 0.40%, and the rate paid on 360 Savings had fallen to an even lower 0.30%. Thereafter, from January 1, 2022 through May 2023, the federal funds rate increased rapidly from 0.08% to 5.06%, and Capital One increased the rate paid on the 360 Performance Savings account to 3.75%. However, Capital One kept the rate paid on the 360 Savings Account at 0.30%. The rate on 360 Performance Savings is currently 4.35%, while the rate on 360 Savings has remained at 0.30%.

10.      The 360 Savings Account Disclosures, which contain the "the terms applicable to [customers'] 360 Savings account[s]" to which customers "agree to be bound" by opening or maintaining the account, provide that "interest rates and annual percentage yields are variable and may change at any time at our [*i.e.*, CONA's] discretion." A covenant of good faith and fair dealing is implied into this agreement, and provides that CONA must exercise its discretion honestly and in good faith. CONA breached the covenant of good faith and fair dealing, and violated state consumer protection statutes, by failing to raise interest rates for its 360 Savings accountholders, to whom Capital One had promised a variable "high interest" rate. Instead, as

stated above, CONA capped the interest rate for the 360 Savings account and furtively created a new, similar sounding savings account product with a higher yield (i.e., 360 Performance Savings), without informing its current customers. In contrast to the 360 Performance Savings account, CONA has not increased the interest rate for its 360 Savings accountholders in response to market conditions, depriving 360 Savings accountholders of interest payments on their purportedly "high interest" account to which they were entitled pursuant to the covenant of good faith and fair dealing implied in their contract with CONA.

11.    Capital One's bad faith is demonstrated by the fact that it buried all references to 360 Savings on the Capital One website (which is operated by both CONA and COFC). Capital One's website prominently advertised, and continues to advertise, the interest rate paid on the 360 Performance Savings account—and *only* the 360 Performance Savings account—creating the impression that it has been Capital One's sole online savings account product and sole online savings interest rate. Customers who are shopping for interest rates or are otherwise looking for information about Capital One's savings account interest rate via a search engine will find either the "Open an Account" page or the 360 Performance Savings Account page, neither of which mention that another account exists and pays a lower interest rate for customers who opened accounts prior to September 2019. Even searching for "360 Savings" will return results about the 360 Performance Savings account. Moreover, clicking on the "View All Accounts" option from the Checking & Savings drop-down menu on Capital One's homepage leads to a page that mentions only 360 Performance Savings, and not 360 Savings. In fact, consumers cannot navigate to any information about 360 Savings account within Capital One's website.

12.      Capital One's conduct caused its 360 Savings accountholders to lose millions of dollars of interest in the aggregate since September 2019, and especially since interest rates began rising rapidly in March of 2022, benefiting Capital One at the expense of its customers.

13.      Capital One was financially motivated to breach the covenant of good faith and fair dealing and to make materially false and misleading statements and/or omissions with respect to the 360 Savings account. Capital One was able to report higher profits by underpaying 360 Savings customers for the use of their cash. According to its Form 10-K filed with the U.S. Securities and Exchange Commission, Capital One earned $27.1 billion in net interest income in 2022, an increase of over 12% from the prior year. Capital One accomplished this increase in profits in part by exercising its discretion unfairly with respect to the interest rate Capital One paid to its 360 Savings customers.

## THE PARTIES

14.      Plaintiff Ronald Hopkins ("Hopkins") is a natural person who is a citizen of the United States and who is domiciled in the State of Texas.

15.      Plaintiff Jerry Magaña ("Magaña") is a natural person who is a citizen of the United States and who is domiciled in the State of California.

16.      Plaintiff Seth Martindale ("Martindale") is a natural person who is a citizen of the United States and who is domiciled in the State of California.

17.      Plaintiff Andrew Molloy ("Molloy") is a natural person who is a citizen of the United States and who is domiciled in the State of Maryland.

18.      Plaintiff Dr. Jay Nagdimon ("Nagdimon") is a natural person who is a citizen of the United States and who is domiciled in the State of California.

19.     Plaintiff Neelima Panchang ("Neelima Panchang") is a natural person who is a citizen of the United States and who is domiciled in the Commonwealth of Virginia.

20.     Plaintiff Sailesh Panchang ("Sailesh Panchang") is a natural person who is a citizen of the United States and who is domiciled in the Commonwealth of Virginia.

21.     Plaintiff Patrick Perger Jr. ("Perger") is a natural person who is a citizen of the United States and who is domiciled in the State of California.

22.     Plaintiff Jane Rossetti ("Rossetti") is a natural person who is a citizen of the United States and who is domiciled in the State of North Carolina.

23.     Plaintiff Amber Terrell ("Terrell") is a natural person who is a citizen of the United States and who is domiciled in the State of Florida.

24.     Plaintiff Gwendolyn Wright ("Wright") is a natural person who is a citizen of the United States and who is domiciled in the State New York.

25.     Plaintiff Elizabeth Zawacki ("Zawacki") is a natural person who is a citizen of the United States and who is domiciled in the State of New Jersey.

26.     Plaintiff Ayal Brenner ("Brenner") is a natural person who is a citizen of the United States and who is domiciled in the State of Israel. Brenner lived in New York from 2002 until 2016, is registered to vote in New York, and continues to maintain an address in New York. Brenner made at least one deposit into his 360 Savings account while in New York, including on September 28, 2023.

27.     Plaintiffs have each been 360 Savings accountholders for a period of time between September 2019 and the present, as alleged in further detail herein.

28.     Defendant Capital One, N.A. is a national bank with its principal place of business in McLean, Virginia. Defendant Capital One, N.A. is a wholly-owned subsidiary of Capital One Financial Corporation.

29.     Defendant Capital One Financial Corporation is a holding company incorporated in the State of Delaware with its principal place of business in McLean, Virginia.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one Plaintiff and member of the Class is a citizen of a state different from Defendants.

31.     This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

## FACTUAL ALLEGATIONS

### I.     Background on High-Interest and High-Yield Savings Accounts

33.     In the context of bank deposit accounts, including savings accounts, interest is the amount of money that the bank pays the depositor for use of the depositor's funds, typically represented as a percentage of the total deposit amount. The annual percentage yield, or APY, is the percentage reflecting the total amount of interest paid on an account based on the interest rate

and frequency of compounding for a 365-day period.[2] Customers can make additional deposits to their savings accounts, and Capital One pays interest on the balances monthly.

34. A "variable" rate savings account has an interest rate that is subject to change according to business and economic conditions. Capital One's website states regarding its savings accounts that "[i]nterest rates will always fluctuate based on the Fed and the economy, but your Capital One savings account is here to help you save."[3] The federal funds rate, set by the Federal Reserve (the "Fed"), is "the central interest rate in the U.S. financial market. It influences other interest rates such as the prime rate, which is the rate banks charge their customers with higher credit ratings. Additionally, the federal funds rate indirectly influences longer-term interest rates such as mortgages, loans, and savings, all of which are very important to consumer wealth and confidence."[4]

35. Capital One notes that there is a difference between "traditional" savings accounts and those that are labeled as "high interest" or "high yield." Its website summarizes the answer to the question, "What is a high-yield savings account?" with the answer, "It's all about the interest." Capital One's website further states: "Simply put, a high-yield savings account— sometimes called a high-interest savings account—is a bank account that often has a higher interest rate or annual percentage yield (APY) than a traditional savings account."[5] Capital One's

---

[2] https://www.capitalone.com/bank/money-management/banking-basics/how-to-calculate-savings-interest/ (dated January 25, 2023; last accessed July 6, 2023).

[3] https://www.capitalone.com/help-center/checking-savings/savings-interest-rate-changes/ (last accessed July 6, 2023).

[4] Board of Governors of the Federal Reserve System (US), Federal Funds Effective Rate [FEDFUNDS], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/FEDFUNDS, July 5, 2023.

[5] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed July 6, 2023).

website also states: "Online high-yield savings accounts earn higher than average interest on the balance amount."[6]

36.     Capital One's website advises that interest rates on high-yield savings accounts may change in response to the federal funds rate, and may be subject to promotional introductory rates: "[T]he interest rate a bank offers on a high-yield savings account can change. Each bank sets its own interest rates. The Federal Reserve's benchmark interest rate can also change, and that sometimes impacts the interest rate banks offer on a high-yield savings account. That's because the Fed's rates are one of the things that banks use to determine the rates they offer. In addition, interest rates banks offer sometimes change as the result of bank promotions. Sometimes a bank will offer a high rate for a limited period of time. But the rate decreases once the promotion is over. So, it's important to compare both the promo rate and the standard rate when you look at the options offered by different banks."[7]

37.     However, Capital One does not advise customers, on its website or otherwise, that high-interest or high-yield accounts are subject to being converted into **non-high-interest** or **non-high-yield** accounts with no notice to customers.

38.     Savings accounts are designed to hold customer money for relatively longer periods of time. Capital One's own website reflects this reality, confirming that savings accounts are intended for "longer-term" deposits than a checking account.[8] Capital One's website further notes that "over time interest can be a nice cushion to your savings account and help you reach your future savings goals."[9]

---

[6] https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (last accessed Sept. 11, 2023).
[7] *Supra* n. 5.
[8] https://www.capitalone.com/learn-grow/money-management/checking-vs-savings-accounts/ (dated August 9, 2022; last accessed July 6, 2023).
[9] *Supra* n.5.

39.    Capital One encourages customers to keep money in high-yield savings accounts for extended periods of time, saying on its website: "Once you deposit your money and keep it in the account, the interest alone will help your savings grow." Capital One's website further advises: "A high-yield savings account can be a safe place to park your hard-earned cash . . . . There are some common things you can do to help your savings grow faster: Put your money into a high-interest savings account and leave it in there to earn interest."[10]

40.    Online savings accounts, as a category, offer significantly higher interest rates than physical branch savings accounts. As Capital One says: "One benefit of most online banks is that they usually don't have the same costs as physical locations. Because of that, they might be able to pass some of their savings to you with lower fees and higher interest savings rates on your deposits. . . . A big difference between online savings vs. traditional savings accounts is how much interest you can earn. Online banks often offer higher interest rates on savings accounts than traditional banks."[11] Consequently, the term "high interest" or "high yield," when applied to an online savings account, is understood to mean that the interest rate is competitive with other online savings accounts.

41.    Capital One's website is operated jointly by Capital One, N.A. and Capital One Financial Corp. The "terms and conditions" on Capital One's webpages pertaining to online banking products "refer to Capital One and its affiliates and related entities as 'we,' 'us' and 'our.' This includes Capital One Financial Corporation, Capital One, N.A. and each of their successors, assigns, agents, and representatives." It also states: "The information contained on the Site, including its arrangement, (other than images licensed from third parties), are copyright

---

[10] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed July 6, 2023).
[11] https://www.capitalone.com/bank/money-management/banking-basics/online-banking-vs-traditional-banking/ (dated March 16, 2022; last accessed July 6, 2023).

©2022 by Capital One Financial Corporation."[12] COFC's 2022 Form 10-K, at 5, states: "We maintain a website at www.capitalone.com." COFC advertises and promotes Capital One online savings accounts via the Capital One website and benefits financially from customers' deposits into those savings accounts. In Note 8 to its 2022 Form 10-K, COFC states: "Our deposits, which include checking accounts, money market deposits, negotiable order of withdrawals, *savings deposits* and time deposits, represent our largest source of funding for our assets and operations." (Emphasis added). Deposits with CONA allow COFC to lend money (via, e.g., credit cards) for profit. *See* COFC 2022 Form 10-K at 6 ("Our consolidated total net revenues are derived primarily from lending to consumer and commercial customers net of funding costs associated with our deposits, long-term debt and other borrowings.").

## II.   Capital One Acquires ING Direct and Begins Offering the "360 Savings" Account

42.     On February 17, 2012, Capital One announced that it had purchased ING Direct USA, a subsidiary of the Dutch-owned bank, ING Group. ING Direct USA at that time was offering an online savings account to U.S. consumers (called ING Direct). This ING Direct savings account was categorized as a high-interest account. After the sale was completed, on or around February 1, 2013, ING Direct became "Capital One 360," the online or cyber branch division of Capital One. Consumers who held ING Direct savings accounts thereafter became Capital One "360 Savings" accountholders, and Capital One began selling 360 Savings accounts to the general public. Capital One's February 17, 2012 press release assured depositors that they would "experience no changes to account services and functionality" and that "ING Direct will continue to provide the same high quality customer experience, products, account servicing and functionality to its customers."

---

[12] https://www.capitalone.com/digital/terms-conditions/ (last modified Feb. 27, 2023; last accessed Sept. 12, 2023).

43. Each of the Plaintiffs opened online savings accounts initially with ING Direct prior to its acquisition by Capital One. Their ING Direct accounts were converted to Capital One 360 Savings accounts on or about February 1, 2013.

44. Customers were made aware of the switch from ING Direct to Capital One in account statements ending January 31, 2013, which was the first account statement with Capital One branding, and which said: "Red's the New Orange. We're the Same Awesome. Hey Saver, ING DIRECT's officially Capital One 360. New red and blue, yes, but everything you've grown to love about us - like eStatements - stays just the same. You'll find everything you need right here, as usual, to easily track your January transactions. It's just part of our ongoing commitment to help you save time and money. Some things never change."

45. Contemporaneously with the integration and rebranding of ING Direct into Capital One 360, Capital One made statements intended to assure customers that the nature of their ING Direct savings accounts as high-interest accounts would not be changing, and that the 360 Savings account would feature a competitive, high interest rate, like the ING Direct savings account had done.

    a. On or about April 24, 2013, Capital One had the following on the "Our History" tab of its online banking website: "Way back in 2000, we set out to build a different kind of bank – one focused on helping our Customers save time & money. We did this by offering simple financial products, giving Savers fee-free checking and savings that they could access from their personal computer. Back then, we were known as this little thing called ING DIRECT USA, and we quickly grew to become the largest direct bank in the country. In 2012, we were acquired by Capital One; and in 2013, we transitioned our ING DIRECT Brand to

13

Capital One 360 – fueled by the same commitment of saving Customers time and money. The name and logo you see today symbolize that we've come full-circle, with a new family, and the same passion. We're excited about our future, and we're committed to helping you save for yours."[13]

b.    On or about May 8, 2013, Capital One issued a "pledge" to customers, saying, among other things: "What's Capital One 360 all about? We'll deliver real value. We'll continue to be home to no-fee, no-minimum checking and saving accounts—*with the great rates that we know are important to you*."[14]

c.    On or about January 22, 2014, Capital One posted a "press kit" on its website regarding its 360 Savings Account, and the first line read as follows: "*High interest*, no fees, no service charges, no kidding. With a 360 Savings, you earn a *competitive rate* with a level of flexibility, freedom, and security you simply won't find at other banks."[15]

46.    The 360 Savings Account Disclosures (available on Capital One's website) contain the "the terms applicable to your 360 Savings account," to which customers "agree to be bound" whenever they "submit an application, open an account, or use [Capital One's] services."

---

[13] https://home.capitalone360.com/about-us/who-we-are/our-history (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130424010504/https://home.capitalone360.com/about-us/who-we-are/our-history) (emphasis added).

[14] https://home.capitalone360.com/capitalone/pledge (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130508064426/https://home.capitalone360.com/capitalone/pledge) (emphasis added).

[15] https://home.capitalone360.com/downloads/press-kit-360-savings.pdf (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20140122080321/https://home.capitalone360.com/downloads/press-kit-360-savings.pdf) (emphasis added).

The 360 Savings Account Disclosures provide that "[t]he interest rates and annual percentage yields are variable and may change at any time at our [i.e., Capital One's] discretion."[16]

47.     The 360 Savings Account Disclosures are made on behalf of Capital One, N.A., and state that for purposes thereof, "[t]he words 'our,' 'us,' 'we,' 'Capital One,' and 'bank' mean Capital One, N.A."[17]

48.     Capital One advertised its 360 Savings account as featuring "high interest" or a "great rate" for over six years, from at least April 2013 through September 2019. For example:

**April 24, 2013**[18]



---

[16] Accessible at https://www.capitalone.com/bank/disclosures/savings-accounts/online-savings-account/.
[17] *Id.*
[18] https://home.capitalone360.com/online-savings-account (accessed June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130424015814/https://home.capitalone360.com/online-savings-account).

**July 8, 2016**[19]

## Challenge everything you'd expect from a savings account.

No Fees  |  Great everyday interest rate  |  Real people at 1-800-289-1992

Open Now

| What's 360 Savings? | Savings Tools | Deposits | Ratings & Reviews |

### 360 Savings® — the online savings account from Capital One 360®.

We've challenged what it means to be a savings account by building one that's better for your money – and we deliver better, every single day. Here's what that means for you:

- **No fees and no minimums:** No fees and no minimum balance required to open or keep an account.
- **A high interest savings account:** Earn a great everyday interest rate on your money – currently 0.75% APY.
- **Real people to help when you need it:** Chat with a real person at 1-800-289-1992 and enjoy 24/7 online and mobile access to your account.
- **Easy ways to stash cash:** Open multiple savings accounts (and nickname them as you wish), keep track with My Savings Goals and put your money on auto-pilot with an Automatic Savings Plan.
- **We have your back:** Your deposits are FDIC–insured up to $250,000 per depositor.
- **Deposit checks in a snap:** Deposit checks from anywhere using your mobile smartphone or computer with Mobile Deposit.

Open Now

### Ratings & Reviews

Check out what Customers are saying about 360 Savings.

### Learn More

View a short demo.
Check out our guide.

### Track Great Saves

Keep your eye on the prize with My Savings Goals.

**WATCH YOUR SAVINGS GROW**

**0.75%**

---

[19] https://home.capitalone360.com/online-savings-account (accessed June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20160708101036/https://home.capitalone360.com/online-savings-account).

**September 1, 2019**[20]

## What's a 360 Savings® account?

A fee-free online savings account with a great rate for any savings balance.

**1.00**% Annual Percentage Yield
A great rate for any savings balance

**Fee-Free**
No monthly fees to keep your account going

**$0**
To open or keep the account

Why 360 Savings?     Rates     Account Details     Mobile Banking     Locations & ATMs     Customer Reviews

### Say yes to the future with 360 Savings.

Your savings will be right there with you.



**Great Rate**
Save at your own pace while earning 1.00% APY on your savings account balance.



**FDIC-Insured**
Keep your savings secure with FDIC Insurance up to allowable limits.



**Top Rated Mobile App**
Deposit checks from the couch and check your balance on-the-go with secure mobile banking.

## II.     Capital One Creates the Higher-Yield "360 Performance Savings" Account Without Informing 360 Savings Accountholders

49.     The federal funds rate, and bank deposit interest rates generally, were very low between 2008 and 2017. In January 2017, the federal funds effective rate was 0.65%. Between January 2017 and January 2018, the federal funds effective rate increased gradually to 1.41% due to rate increases implemented by the Federal Reserve. In January 2018, in the midst of this rising

---

[20] https://www.capitalone.com/bank/savings-accounts/online-savings-account/ (accessed June 15, 2023 via Wayback Machine at https://web.archive.org/web/20190901043647/https://www.capitalone.com/bank/savings-accounts/online-savings-account/).

interest rate environment, Capital One increased the rate on the 360 Savings account from 0.75%
to 1.00%.

     50.    Capital One would never raise the interest rate on 360 Savings again. Instead, on
or around September 16, 2019, Capital One introduced a new online savings account: the
similarly named "Capital One 360 Performance Savings" account.[21] At the same time, Capital
One removed references to the 360 Savings account from the page on its website that listed its
savings account products, even though 360 Savings still existed as a separate product.
On **September 17, 2019**, Capital One's website showed 360 Savings as its non-retirement online
savings account product.[22]

## Compare savings accounts.




| 360 Money Market® | | 360 Savings® | | Kids Savings Account | |
|---|---|---|---|---|---|
| Where you can bank | **Online/Mobile** | Where you can bank | **Online/Mobile** | Where you can bank | **Online/Mobile** |
| APY | Up to **1.90%** | APY | **1.00%** | APY | **1.00%** |
| Minimum balance for 1.90% | **$10,000** | Minimum balance | **$0** | Minimum balance | **$0** |
| FDIC-insured | **Yes** | FDIC-insured | **Yes** | FDIC-insured | **Yes** |
| **Open Account** | | **Open Account** | | **Open Account** | |
| Read Disclosures | | Read Disclosures | | Read Disclosures | |

---

[21] https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (accessed on
June 15, 2023 via Wayback Machine at URL
https://web.archive.org/web/20190916153024/https://www.capitalone.com/bank/savings-accounts/online-
performance-savings-account/).
[22] https://www.capitalone.com/bank/open-an-account/ (accessed on June 15, 2023 via Wayback Machine
at URL https://web.archive.org/web/20190917195820/https://www.capitalone.com/bank/open-an-
account/).

However, the next day, on **September 18, 2019**, Capital One's website dropped the reference to 360 Savings and instead showed 360 Performance Savings as its non-retirement online savings account product (with no explanation that this was a different account from 360 Savings).[23]

## Compare savings accounts.





51.    As shown above, when it was introduced, the new 360 Performance Savings account featured a 1.90% APY. At that same time, the APY on the 360 Savings account remained at 1.00%. Thus, instead of raising the 360 Savings rate to 1.90%, Capital One created 360 Performance Savings with a 1.90% APY but kept the 360 Savings rate at 1.00% (at the time). The 360 Performance Savings account has continued to have a significantly higher interest rate than 360 Savings, at every moment from its creation on or about September 16, 2019 to the present day.

---

[23] https://www.capitalone.com/bank/open-an-account/ (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20190918192359/https://www.capitalone.com/bank/open-an-account/).

52.     Capital One did nothing to inform its customers that 360 Performance Savings was in fact a different product, and not just a new name for the existing 360 Savings product. Capital One did not notify any 360 Savings accountholders about the creation or existence of the 360 Performance Savings account, or that the 360 Performance Savings account offered a higher APY than the 360 Savings account. Plaintiffs' monthly statements did not state that Capital One had introduced the 360 Performance savings product with a better APY.

53.     Capital One buried all references to 360 Savings on its website. Capital One's website mentions only the 360 Performance Savings account and not the 360 Savings account. The "View All Accounts" option from the Checking & Savings drop-down menu on Capital One's homepage leads to a page that mentions only 360 Performance Savings, and not 360 Savings. Customers cannot navigate to any information about the 360 Savings account within Capital One's website.

54.     Capital One was financially motivated to not inform 360 Savings accountholders that the new 360 Performance Savings account was available to them. For every day that 360 Savings accountholders kept their money in the 360 Savings account and did not discover and switch to the 360 Performance Savings account, Capital One profited from paying less interest to those accountholders than it otherwise would have.

III.    **Capital One Freezes Rates on the 360 Savings Account but Raises Rates on the 360 Performance Savings Account**

55.     After creating the 360 Performance Savings account, Capital One did not exercise its contractual discretion in good faith to adjust the variable interest rate for the 360 Savings account. Instead, from October 2019 through December 2020, Capital One dropped the rate paid on 360 Savings from 1.00% APY to 0.30% APY and then froze that rate at 0.30% from

December 2020 to the present, notwithstanding material increases in the federal funds rate and the rate paid on the 360 Performance Savings account.

56.    For example, as of May 2023, the federal funds rate was 5.06%, the rate paid on 360 Savings was 0.30%, and the rate paid on 360 Performance Savings was 3.75%. Since then, Capital One has further increased the rate paid on 360 Performance Savings to 4.35%.

57.    The following graph shows the Federal Funds effective rate (gray), the rates on 360 Savings (blue), and the rates on 360 Performance Savings (red) over time[24]:

---

[24] Federal Funds rate data taken from St. Louis Fed, accessible at https://fred.stlouisfed.org/series/FEDFUNDS. Rate data for 360 Savings taken from Plaintiffs' account statements. Rate data for 360 Performance Savings taken from Capital One's website, where available, supplemented by promotions on DepositAccounts.com (https://www.depositaccounts.com/savings/), accessed via Wayback Machine, as well as account statements. Rates are approximate because they may change at different points during the month.



58.    As shown in the chart above, Capital One has raised interest rates on the 360

Performance Savings account in response to market conditions, but has kept interest rates on the

360 Savings account fixed. Since approximately December 2020, the 360 Savings account has

maintained an interest rate of 0.30%, which, in contrast to the 360 Performance Savings rate, has

not changed in response to rising market interest rates.

59.    The 360 Performance Savings Account Disclosures contain the exact same

language as the 360 Savings Account Disclosures, namely that "interest rates and annual

percentage yields are variable and may change at any time at our [i.e., Capital One's]

discretion."[25] There is no good faith explanation for why CONA would use its discretion to offer much higher interest rates to 360 Performance Savings customers than to 360 Savings customers, when both accounts have the same discretionary interest rate provision in their Account Disclosures and when both were marketed as "high interest" / "high yield."

60.     As alleged above, Capital One positioned its 360 Savings account as its high-interest online savings account offering. After interest rates rose, instead of exercising its discretion in good faith to raise rates for 360 Savings accountholders, Capital One instead created a new, but materially identical account, with a similar name, without informing current customers, thus attempting to conceal from current customers that Capital One had changed the nature of the 360 Savings account product at its customers' expense. Capital One did so to take advantage of customers who used their 360 Savings account to—in Capital One's words—"park" their "longer-term" cash holding and "leave it in there," in an account that Capital One had previously promised would pay a variable "High Interest" rate.

61.     As alleged above, Capital One promoted the 360 Savings account as paying "High Interest," and similarly promotes the 360 Performance Savings account as paying a "High Yield." There is no difference between these two terms; as Capital One acknowledges on its website, "High Interest" and "High Yield" mean the same thing.[26] Capital One thus acknowledges the contradictions in its conduct by emphasizing that currently it pays "High Yield" on its 360 Performance Savings account, whereas previously it had committed to pay "High Interest" on the 360 Savings account—two terms that mean the same thing, but used with

---

[25] https://www.capitalone.com/bank/disclosures/savings-accounts/online-performance-savings-account/
[26] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed July 6, 2023).

respect to accounts that currently pay materially different interest rates. The 360 Savings account is in fact no longer "high interest" or "high yield."

62.     The interest rates on ING Direct savings accounts fluctuated over time. After Capital One took over those accounts and converted them into 360 Savings accounts, Capital One raised the interest rate in 2017 in response to changing market conditions. This course of conduct is consistent with customers' reasonable expectation that the "variable" rate on their 360 Savings accounts would change over time. Moreover, the newer 360 Performance Savings account also states that it is a "variable" rate account,[27] and the rate on that account has changed repeatedly (both up and down) since its inception in 2019. However, Capital One has failed to change the rate on the 360 Savings account since 2020. Consequently, it no longer is a "variable" rate account.

63.     As explained in further detail below, Capital One's conduct has caused each of the Plaintiffs to lose out on interest payments proportionate to their account balances since September 2019, compared to what they each would have received had Capital One adjusted the 360 Savings interest rate in good faith, commensurate with the 360 Performance Savings rate.

## IV.    360 Savings Accountholders React to Capital One's Conduct

64.     Plaintiffs were entitled to interest rates determined by Capital One's exercise of honest and good faith discretion. By failing to raise rates on the 360 Savings account and instead furtively creating a new savings account product, Capital One acted deceptively, dishonestly, and unfairly. In so doing, Capital One breached its contract with Plaintiffs and violated consumer protection statutes and/or common law as further alleged herein.

---

[27] *Supra* n.6.

65.     There is no reason why anyone would choose the 360 Savings account over the 360 Performance Savings account. The products are identical except for the interest rate.

66.     Each of the Plaintiffs had a 360 Savings account for some period of time following Capital One's creation of the 360 Performance Savings account in or around September 2019. The 360 Performance Savings account has always had a higher interest rate than the 360 Savings account. Consequently, each one of them lost money in the form of interest payments that they should have received had Capital One acted honestly and in good faith.

67.     Plaintiff Hopkins initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around November 2022, Hopkins called Capital One to ask why his 360 Savings account had a different interest rate from the 360 Performance Savings account. Capital One advised him that it no longer supported the 360 Savings product and that he should close the 360 Savings account and open another 360 Performance Savings account, which he did. Hopkins estimates that he lost between $2,000 and $3,000 that he would have received had Capital One exercised its interest rate discretion in good faith, commensurate with the 360 Performance Savings account.

68.     Plaintiff Magaña initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around May of 2023, he removed nearly all of his funds from his 360 Savings account and placed it in a higher yielding account. Magaña left a nominal amount in his 360 Savings account to preserve access to information.

69.     Plaintiff Martindale initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. Martindale called Capital One in or around fall of 2022 to inquire as to why he was not receiving

Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse him for the unpaid interest. The Capital One representative informed Martindale that, at some point, Capital One moved everyone over to old antiquated accounts, which he had, and that anyone who opened a new account from that point on was paid a high interest rate. The Capital One representative further admitted that Capital One did not notify anyone of its conduct. After this call, Martindale closed his 360 Savings accounts and moved his money to savings accounts that paid a higher interest rate at a different bank.

70.    Plaintiff Molloy initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around October 2022, Molloy called Capital One to inquire as to why he was not receiving Capital One's advertised savings account interest rate, and to demand that Capital One reimburse him for the unpaid interest. Capital One informed Molloy that 360 Savings accounts were "legacy" accounts and that Capital One was no longer updating that account product, and refused his request for compensation. Molloy moved almost all of his money to a new 360 Performance Savings account but maintained a small balance in his existing 360 Savings account to preserve access to information.

71.    Plaintiff Nagdimon initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. Dr. Nagdimon also opened other accounts with ING and also directly with Capital One, totaling over 20 accounts combined. In December of 2022, he called Capital One with a request for banking assistance. In discussing changes to his accounts, he was told that the Capital One Performance 360 account paid much higher interest than what he was currently receiving. It was at that time

Dr. Nagdimon realized that all of his accounts were legacy accounts and not earning the same rate as the Capital One Performance savings account.

72.    Plaintiffs Neelima and Sailesh Panchang initially opened a joint online savings account with ING Direct, which they continued to use jointly after the account was converted to a Capital One 360 Savings account. In or around January 2024, Sailesh Panchang contacted Capital One via phone regarding the interest rate he and his wife were earning on their 360 Savings account and to demand restitution. The Capital One representative with whom Sailesh spoke refused to provide restitution and advised Sailesh to open a 360 Performance Savings account, which he did. Sailesh moved almost all of his funds from the 360 Savings account to a new 360 Performance Savings account. Sailesh kept a nominal amount of funds in the 360 Savings account to preserve access to information and the account details.

73.    Plaintiff Perger initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around March 2023, he contacted Capital One via phone regarding the interest he was earning on his 360 Savings accounts. He was told that he needed to open 360 Performance Savings accounts to receive Capital One's advertised interest rate, which he did. Capital One did not reimburse him for the higher interest he missed out on.

74.    Plaintiff Rossetti initially opened an online savings account with ING Direct, which she continued to use after it was converted to a Capital One 360 Savings account. She read the Wall Street Journal article on or about January 20, 2024 and was shocked to learn about Capital One's deceptive and unfair conduct. Realizing that her account was paying only 0.3%, she immediately opened a 360 Performance Savings account and transferred her funds to it.

75.    Plaintiff Terrell had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. When interest rates were rising throughout 2023, she checked Capital One's website and assumed she was being paid the rate advertised there, since the website mentioned only one savings account. However, she could not understand why she was earning so little interest, and so in or around November 2023, Terrell called Capital One to inquire about the issue. Capital One informed Terrell that she had a "legacy" account and that only the 360 Performance Savings account earned the rate that was advertised on Capital One's website. Terrell informed Capital One that she felt she had been deceived and demanded restitution. The Capital One representative with whom she spoke gave her a mailing address if she wanted to submit a complaint to the bank, but otherwise refused to offer any redress.

76.    Plaintiff Wright had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. In or around December 2023, she called Capital One after realizing that her account was not earning a competitive interest rate commensurate with Capital One's advertised rate. Capital One informed her that her account had been "grandfathered." She immediately opened and moved most of her funds to a 360 Performance Savings account, leaving a small amount in her 360 Savings account to preserve access to information.

77.    Plaintiff Zawacki had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. She called Capital One in or around December 2023 to inquire as to why she was not receiving Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse her for the unpaid interest. Capital One denied Zawacki's reimbursement request and informed Zawacki that

360 Savings accounts had been "grandfathered." Zawacki moved almost all of her money to a 360 Performance Savings account in January 2024. Zawacki kept her 360 Saving account open to preserve access to information.

78. Plaintiff Brenner had an ING Direct online savings account in New York, which he continued to use after it was converted to a Capital One 360 Savings account. As interest rates were rising in recent years, he transferred money to the account believing that it was still a variable interest rate account tied to the national rates. In addition, he searched online to see how his Capital One 360 Savings Account compared to other accounts, which led him to the Capital One website, which indicated (as alleged above) that Capital One had only one savings account with a competitive rate. Based on this he made numerous deposits as rates were rising, include a deposit made into his 360 Savings account while in New York on September 28, 2023. Brenner read the Wall Street Journal article on or about January 20, 2024 and was furious to learn about Capital One's deceptive and unfair conduct. He moved almost all of his money out of his 360 Savings account, but kept the account open with a nominal balance to preserve access to information.

79. In the related *Savett* action, another customer, Samuel Hans ("Hans"), alleges that he called Capital One in April 2023 to inquire as to why he was not receiving Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse him for the unpaid interest. When Hans notified the Capital One representative that he had a 360 Savings account, the representative placed Hans on hold; when she returned, she stated that it was the responsibility of accountholders to ensure they are earning the highest possible interest rates on their savings accounts and refused to reimburse Hans for lost interest.

80.     Hans emailed Capital One in May 2023 to again demand restitution. In response, Capital One wrote: "Our research shows that you're requesting backdated interest to your 360 Savings account, to match what you would've earned in the 360 Performance Savings account. You also are seeking clarity as to why you weren't notified of this new product, and rate change. We currently don't send proactive notifications about every rate change that occurs, but you can keep track of your current rates and any recent changes by signing in to the Capital One website or mobile app. We also currently don't offer crediting of additional backdated interest when funds are moved to a product earning a higher rate. You can view rates for all our current 360 product offerings at www.capitalone.com by going to the 'Checking & Savings' tab at the top of the page and selecting 'View & Compare Rates.'" This last claim by Capital One is false, because the "View & Compare Rates" webpage only shows the 360 Performance Savings rate, and does not show the 360 Savings rate (or even any indication that it still exists as a separate product).

81.     Hans replied to Capital One's email and explained how its conduct was unfair and dishonest, writing: "Since there is no information about the 360 Savings Account on your website and since I did not know I was not in the 360 Performance Savings Account how can I compare the features and benefits. . . . I don't expect Capital One to notify me every time the interest rate changes. I do expect Capital One to not keep me in a low interest rate earning savings account while publicly advertising a similar sounding savings account with a significantly higher earned rate of interest. I frequently went to the website to check what the earned interest rate was on the sole savings account listed on your website. How was I supposed to know that you had other products that you no longer advertised. It is a reasonable assumption that since there was only one savings account product listed on the website and that one savings

account had a similar sounding name, that was the product my money was in. Having an account named '360 Savings Account' vs '360 Performance Savings Account' with significantly different earned interest rates with no distinct features has no rational basis other than to mislead and deceive customers into thinking they are receiving the higher rate of interest earned. Keeping existing customers in the '360 Saving Account' while advertising the higher interest rate of '360 Performance Savings Account' and not notify customers that these are different products and not providing a comparison of the products on your website is further evidence that Capital One intended to deceive customers. The fact that both customer service workers I spoke with immediately changed their tone when I asked questions about the difference in these accounts and refused to answer questions while reading from a corporate prepared script suggest that Capital One is aware of this deceit and is actively trying to manage its risk for customers that are similarly situated like me. The difference in these two accounts is intended to mislead the customer. No reasonable customer should be required to see through this deceptive practice and the difference in the rate of interest earned on the accounts is a material difference." Although Hans's email also asked follow-up questions, Capital One did not respond to it.

82.    Hans also filed a complaint with the Consumer Financial Protection Bureau on or about August 24, 2023. In response, Capital One repeated that it does not send "proactive notifications about every rate change that occurs," but also added that, "[w]e confirmed, as of September 2019 the 360 Savings product was grandfathered."

83.    Capital One's conduct has been widely panned as dishonest and unfair. Complaints from consumers regarding Capital One's practices abound on the Internet, and even savvy consumers who follow and post on personal finance blogs were surprised by Capital One's conduct with respect to its savings accounts.

31

84.    On October 24, 2019, a personal finance YouTuber posted a video alerting followers of her "Freedom in a Budget" channel to the existence of the new 360 Performance Savings account and to the fact that existing Capital One customers would have to open a new account and move their money in order to take advantage of Capital One's high yield savings account rate.[28] She further said: "I wish that they had automatically just transferred everyone to the Performance Savings, I mean, why wouldn't you want it? There's no other benefits that the old one had that this one doesn't, so you're getting more interest. So, to me, I don't know, I feel like it's, I don't want to say shady, but just come on, like seriously Capital One, you're making everyone transfer it over rather than just bumping it up?"

85.    Writers on the Bogleheads personal finance forum have taken note of Capital One's conduct. One thread beginning on June 17, 2020 is entitled "Capital One is at it again."[29]

    a.    A post on June 18, 2020 reads: "Nobody is saying a savings account should have a fixed rate. Rates are dropping, we get that. What's shady is when Capital One, CIT, and others create a new type of account, and only the new one has a competitive rate, while rates on existing accounts become uncompetitive. When you add the lack of notification about rate changes and difficulty of seeing the actual rate (both in contrast to Ally and Marcus, who put it right on their home pages, no need to even log in), yeah, I think it's totally fair to call it shady."

    b.    Another post on June 18, 2020 reads: "What's slimy is that while 360 Savings used to be heavily promoted and had a competitive rate, Capital One created a whole new account, 360 Performance Savings, with competitive rates, and made

---

[28] https://www.youtube.com/watch?v=ACpLVLwMznI (dated October 24, 2019; last accessed July 6, 2023).

[29] https://www.bogleheads.org/forum/viewtopic.php?t=317965 (last accessed July 6, 2023).

the old accounts' rates uncompetitive (the older one gets 0.5% and the new one gets 1%). Unlike with [a money market account], there's no discernible difference between 360 Savings and 360 Performance Savings, so there's zero reason for this except to screw over existing customers. And because they don't "spam" their customers as you call it (except, interestingly, when rates go up!), many customers don't know about this."

c.   Yet another post on June 18, 2020 lamented: "Capital One dropped the rates to an uncompetitive level for existing customers, didn't tell them about it, also didn't tell them about the new account."

86.   As illustrated in the chart above, when prevailing interest rates were low in 2020 and 2021, there was a comparatively small difference between the 360 Savings account rate (0.30% APY) and the 360 Performance Savings account rate (0.40% APY). However, when market interest rates started rising in 2022 alongside increases in the federal funds rate, 360 Savings accountholders increasingly were deprived of high interest rates.

87.   Another Bogleheads post dated November 5, 2022 reads: "[I]f you look at nearly every popular high yield online bank, they do new promos / bonus offers, but very rarely screw their existing base. They just raise your account to their normal high rate. Sure you may miss out on 1% extra bonus up to $x dollar amount, but you're never completely slammed like 0.3% -> 3%…"[30] A response to this post on the same date reads: "I do find it unscrupulous of them and it's basically a form of bait and switch."

88.   The Women's Money blog has a post, dated September 29, 2022, entitled "IS CAPITAL ONE CHEATING YOU TOO? THE SECRET YOU MUST KNOW ABOUT YOUR

---

[30] https://www.bogleheads.org/forum/viewtopic.php?t=389707 (last accessed July 6, 2023).

HIGH-INTEREST ACCOUNT."[31] This post alleges the same conduct by Capital One at issue in this Complaint. Specifically, the author writes: "As diligent as I am with my money, I recently discovered I was losing thousands of dollars a year in interest. I thought I had a high-interest bank account with Capital One, but it turns out, my interest rate was only 0.30%. Why was it so low? Because apparently several years ago Capital One essentially archived certain legacy accounts – the "360 Savings Accounts"– and instead created a competing product that actually earns high interest. (These new accounts are called a deceptively similar name – the "360 Performance Savings Account" and currently earn 2.15% interest.) At first upon learning I had only been earning 0.30% interest instead of a competitive rate, I was embarrassed – how could I as a personal finance writer miss this? Then I was angry, not just for myself, but for the millions of consumers who are similarly situated to me. Why was I angry? Because Capital One told us we had high-interest accounts. Further, when Capital One stopped keeping our accounts at high-interest, and instead created a competing product that paid much higher rates, they didn't email us or automatically opt us in to the new accounts. They just left us to sit out there believing we still held high-interest accounts." The author later concludes: "Personally, I'm really angry at Capital One and believe they violated the law. U.S. banks aren't allowed to engage in unfair, deceitful, or abusive acts or practices. I believe that by holding out the legacy ING Direct accounts as high-interest accounts and not contacting consumers of the accounts to let us know that we in fact no longer part of their high-interest rate account family (you can't even find information about the 360 Savings Account on their website), Capital One engaged in deceitful practices. They could have sent an email or automatically rolled our accounts into the new 360

---

[31] https://womensmoney.com/blog/capital-one-cheating-you-too-high-interest-accounts/ (dated September 29, 2022; last accessed July 6, 2023).

Performance Accounts. But instead, they just let us lose money." The Women's Money Blog post has seventeen (17) comments, including the following:

a. On October 2, 2022, one commenter wrote: "Yes, I thought about opening a Performance Account (and I probably would have if they had ever emailed me and offered it or told me I needed to do it to keep my rate. I kept every one of my emails from them. I thought I must have missed an email but I went back and never did. They tried to get me to open a money market account, but never mentioned the Performance Savings!)[]. But I would just worry that they would do it again with the Performance Account. Seemed safer to move my money to a company that seems more interested in keeping my business."

b. On February 3, 2023, a commenter wrote: "I discovered this same fraudulent behavior by capital one bank today. I have been a customer since the ING Direct days, from 2004. I lost over ten thousand dollars in interest due to this scam by Capital One. I am mad at them and closing my account soon and considering moving to SoFi or AllyBank."

c. Also on February 3, 2023, a commenter wrote: "We just found out about this scam by Capital One bank today as well. Like many of you posting here, we have been a customer since the ING Direct days. We spoke with customer service about this and escalated to a manager. I requested them to send me information on when this Performance Savings account product was created and what the interest rates have been since inception. They said they will provide this information in 30 days though[] I doubt I'll hear back from them. They took an action item that they should improve their process to let existing customers know about this new

product – again I doubt that will lead to anything since they know customers have been complaining about this for many years now. We all have lost thousands of $ of interest at this point – Wonder if there is a class action lawsuit here. This just stinks."

    d.   On February 9, 2023, another commenter wrote: "My wife and I banked with ING Direct > Capital One for many years and experienced the same thing. Capital One reduced the rates on our accounts as market rates decreased in 2020 and 2021 and we assumed wrongly they were increasing them as market rates increased in 2022. It's embarrassing to say we lost many thousands of dollars interest by not paying attention to what they were doing with the interest rates. They've probably made many millions on this scheme by cheating inattentive clients."

89.    On the informational website DepositAccounts.com, posters similarly complained about Capital One's conduct.[32]

    a.   A post from December 30, 2022 reads: "I discovered today that my Capital One savings accounts were only earning 0.3% and not earning the advertised 3.3% APY. So I called to ask why, and it turns out I had OLD "360 Savings" accounts and not the new "360 Performance Savings" accounts…I did not know I was playing a shell game with my bank. Don't take an eye off these slime bags!"

    b.   A post from February 5, 2023 reads: "I have been a customer of Capital One (IngDirect originally) since 2004. I had their '360 Savings account'. Capital One claimed it is a high interest account and rates will fluctuate based on Federal reserve interest rates. Apparently, some years ago they started a new savings

---

[32] https://www.depositaccounts.com/banks/reviews/capital-one-360.html (last accessed July 6, 2023).

account called '360 Performance Savings' with much higher interest rates. For

example, the new Performance savings has an interest rate of 3.4% as of today.

While the legacy account is only at 0.3% and it stopped fluctuating with Fed rates

many years ago. So I lost a lot of money over the years as my savings account

silently turned into a regular savings account and stopped being a high interest

account. They didn't inform established customers of the new Performance

savings account and kept people like me at 0.3%. They should have upgraded all

accounts to the new type. At a minimum, they should have informed existing

customers of this new account type. I learned about this new account type

yesterday. This is clearly bad faith behavior by the bank. I am in the process of

closing out my account. I can never trust Capital One again. You should not do

this to long term customers to make a few bucks."

90.    The online complaints alleged above are illustrative and not an exhaustive

recounting of the many online complaints against Capital One for the conduct alleged herein.

## CLASS ALLEGATIONS

91.    This action is brought by Plaintiffs, for themselves and on behalf of all others

similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). Plaintiffs

seek to represent a class of all persons who have been Capital One 360 Savings accountholders

since Capital One created the 360 Performance Savings account (the "Class").

a.    Plaintiff Hopkins seeks to represent a subclass of all persons in Texas who have

been Capital One 360 Savings accountholders since Capital One created the 360

Performance Savings account (the "Texas Subclass").

b.  Plaintiffs Magaña, Martindale, Nagdimon, and Perger seek to represent a subclass of all persons in California who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "California Subclass").

c.  Plaintiff Molloy seeks to represent a subclass of all persons in Maryland who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Maryland Subclass").

d.  Plaintiff Rossetti seeks to represent a subclass of all persons in North Carolina who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "North Carolina Subclass").

e.  Plaintiff Terrell seeks to represent a subclass of all persons in Florida who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Florida Subclass").

f.  Plaintiffs Wright and Brenner seek to represent a subclass of all persons in New York who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "New York Subclass").

g.  Plaintiff Zawacki seeks to represent a subclass of all persons in New Jersey who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "New Jersey Subclass").

92.    Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclasses, individually and collectively.

93.     Excluded from the Class are Capital One and any person, firm, trust, corporation, or other entity related to or affiliated with any of Capital One's partners, subsidiaries, affiliates or joint ventures.

94.     The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. At all relevant times, there were thousands of 360 Savings accountholders. The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery.

95.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to Class and/or Subclasses are:

a.     Whether Capital One, N.A. adjusted (or did not adjust) the interest rate associated with 360 Savings accountholders dishonestly, unfairly, and/or in bad faith;

b.     Whether Capital One, N.A. breached the covenant of good faith and fair dealing implied by law into its contracts with 360 Savings customers;

c.     Whether Capital One Financial Corp.'s conduct violates the Virginia Consumer Protection Act;

d.     Whether, as to the respective Subclasses, Capital One's conduct violates the California Consumer Legal Remedies Act, California Unfair Competition Law, Texas Deceptive Trade Practices Act, New York G.B.L. § 349, New Jersey Consumer Fraud Act, Florida Unfair and Deceptive Trade Practice Act, North Carolina Unfair and Deceptive Trade Practices Act, and Maryland Consumer Protection Act;

e.  Whether Capital One's conduct violates principles of quasi-contract and caused Capital One to be unjustly enriched;

f.  Whether Capital One's conduct violates principles of promissory estoppel;

g.  Whether Capital One's wrongful conduct caused Plaintiffs and the Class members damages;

h.  The amount of damages suffered by Plaintiffs and Class members;

i.  The amount of restitution to which Plaintiffs and Class members are entitled;

j.  Whether Plaintiffs and the Subclass members are entitled to treble and/or punitive damages;

k.  Whether Plaintiffs and Class members are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

96.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because they were all 360 Savings accountholders and received the same interest rate.

97.    Plaintiffs will adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiffs' attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

98.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual

litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

99.    Defendants have acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

100.    Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Capital One's records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

101.    To the extent reliance is an element of any of the claims asserted herein, Plaintiffs and all Class members uniformly have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Savings Account and the 360 Performance Savings Account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT
## AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## AGAINST DEFENDANT CAPITAL ONE, N.A.

## ON BEHALF OF THE CLASS

102.    Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

103.    The 360 Savings Account Disclosures, which contain the "the terms applicable to [customers'] 360 Savings account" to which customers "agree to be bound," provide that 360 Savings "accounts are subject to both federal law and the laws of the state of Virginia."

104.    The contract between the respective Plaintiffs (and other Class members) on the one hand, and Capital One, N.A. on the other hand, previously described herein, provides that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., Capital One's] discretion."

105.    A covenant of good faith and fair dealing is implied by law in Capital One, N.A.'s contracts with 360 Savings customers, and provides that Capital One, N.A. must exercise contractual discretion honestly and in good faith.

106.    Although Capital One, N.A. had discretion to set the interest rate paid on the 360 Savings account, that discretion is subject to the covenant of good faith and fair dealing.

107.    Capital One, N.A. breached the covenant of good faith and fair dealing by paying a materially lower rate of interest for its 360 Savings account, which Capital One represented as having the same fundamental characteristic (i.e., a high interest rate) as the newer 360

Performance Savings account. Instead of exercising its discretion to adjust the interest rate on the 360 Savings account after market interest rates rose, Capital One instead unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account. Capital One's conduct is dishonest and unfair because Capital One did nothing to inform its 360 Savings customers about the creation or existence of the 360 Performance Savings account, or that the 360 Performance Savings account offered a higher APY than the 360 Savings account, or that 360 Performance Savings was in fact a different product, and not just a new name for the existing 360 Savings product, and because Capital One failed to pay the same interest rate on the 360 Savings account that it paid on the 360 Performance Savings Account.

108.    Defendant's breach damaged Plaintiffs and members of the putative Class.

## COUNT II

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT, VA. CODE ANN. § 59.1-200

### AGAINST DEFENDANT CAPITAL ONE FINANCIAL CORP.

### ON BEHALF OF THE CLASS AND/OR THE VIRGINIA SUBCLASS

109.    Plaintiffs, including Neelima Panchang and Sailesh Panchang, re-allege and incorporate all other factual allegations set forth in this Complaint.

110.    Capital One Financial Corp. is a "supplier" and the conduct described herein is a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

111.    As described above, while engaging in trade or commerce within the Commonwealth of Virginia during the time period relevant hereto, Defendant Capital One Financial Corp.:

a. Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b. Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

c. Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

112. The aforesaid fraudulent acts and practices are unlawful and prohibited by the provisions of the Virginia Consumer Protection Act, Va. Code. Ann. § 59.1-200, including, but not limited to, the following:

a. "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (§ 59.1-200(A)(5));

b. "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (§ 59.1-200(A)(6));

c. "Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (§ 59.1-200(A)(8));

d. "Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (§ 59.1-200(A)(14)); and

e.  "Violating any provision of § 18.2-178," i.e., "obtain[ing] by any false pretense or token, from any person, with intent to defraud, money" (§ 59.1-200(A)(57)).

113.     The Virginia Consumer Protection Act is "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code. Ann. § 59.1-197. Application of the Virginia Consumer Protection Act to Defendant Capital One Financial Corp.'s conduct as alleged herein is proper because that conduct was committed by Defendant in Virginia and Defendant was unjustly enriched in Virginia.

114.     The aforesaid acts damaged Plaintiffs and members of the putative Class and/or Virginia Subclass.

115.     Plaintiffs the putative Class and/or Virginia Subclass are entitled to treble and/or punitive damages pursuant to Va. Code. Ann. § 59.1-204.

## COUNT III

**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,
CAL. CIV. CODE §§ 1750, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE CALIFORNIA SUBCLASS**

116.    Plaintiffs Magaña, Martindale, Nagdimon, and Perger re-allege and incorporate

all other factual allegations set forth in this Complaint.

117.    The conduct of Defendants alleged above constitutes an unfair method of

competition and unfair or deceptive act or practice in violation of the Consumers Legal

Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA").

118.    Defendants' savings accounts are services as defined by Cal. Civ. Code §

1761(b). The 360 Savings Account Disclosures further refer to CONA's "services," including

Electronic Fund Transfer (EFT) "services," a Mobile Deposit "service," and Automatic Clearing

House (ACH) External Transfer transactions.

119.    Defendants are each persons under Cal. Civ. Code § 1761(c).

120.    Plaintiffs and California Subclass members are consumers under Cal. Civ. Code §

1761(d).

121.    Plaintiffs' use of their savings accounts were transactions under Cal. Civ. Code §

1761(e).

122.    As described above, while engaging in trade or commerce within the State of

California during the time period relevant hereto, Defendants:

        a.    Unfairly and deceptively created a new account, the similarly named "360

             Performance Savings" account, which featured a higher APY than the 360

Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.  Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

c.  Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

123.   Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer, in violation of the CLRA, as follows:

a.  Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.");

b. Cal. Civ. Code § 1770(a)(7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.");

c. Cal. Civ. Code § 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised.");

d. Cal. Civ. Code § 1770(a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.");

e. Cal. Civ. Code § 1770(a)(16) ("Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.").

124.    The misrepresentations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether or not to purchase Defendants' services. Plaintiffs and class members justifiably and uniformly acted or relied upon Defendants' misrepresentations and omissions to their detriment.

125.    Plaintiffs and the other members of the California Subclass have been, and/or continue to be, injured as a direct and proximate result of Defendants' violations of the CLRA.

126.    Plaintiffs are entitled to pursue a claim against Defendants on behalf of themselves and the California Subclass to enjoin Defendants from continuing their unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

127.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs are serving on Defendants a CLRA notice letter. If Defendants fail to rectify these issues within the time period specified therein,

Plaintiffs will amend this Complaint, as permitted thereby, to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

## COUNT IV

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. CIV. CODE § 17200, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CALIFORNIA SUBCLASS

128.    Plaintiffs Magaña, Martindale, Nagdimon, and Perger re-allege and incorporate all other factual allegations set forth in this Complaint.

129.    Plaintiffs assert this cause of action against Defendants for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

130.    Defendants' conduct violates the UCL, as the acts and practices of Defendants constitute a common and continuing course of conduct by means of "unlawful" "unfair" and "fraudulent" business acts or practices within the meaning of the UCL.

131.    As described above, while engaging in trade or commerce within the State of California during the time period relevant hereto, Defendants:

a.    Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.    Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account

49

continued to exist with a much lower interest rate, which information is material to customers;

c. Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

132.    Defendants' conduct is fraudulent. As alleged above, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, without informing current customers, thus attempting to conceal from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

133.    Defendants' conduct is unlawful in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, as well as California Business & Professions Code § 17500. As alleged herein, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, without informing current customers, thus attempting to conceal from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

50

134.    Defendants' conduct is unfair, because its utility, if any, is greatly outweighed by the harm it causes to Plaintiffs and members of the California Subclass; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers; and because it violates established public policy as alleged herein. As alleged herein, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, without informing current customers, thus attempting to conceal from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

135.    As a direct and proximate cause of Defendant's violations of the UCL, Plaintiffs and members of California Subclass suffered an injury in fact and have suffered monetary harm. Defendants, on the other hand, have been unjustly enriched. The Court should impose a constructive trust and should require Defendants to make restitution to Plaintiffs and the California Subclass and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

136.    Defendants' unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs and the general public in that Defendants' deceptive conduct is ongoing. Plaintiffs further seek an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

137.    Plaintiffs and the California Subclass seek equitable relief because they have no other adequate remedy at law.

## COUNT V

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, TEX. BUS. & COM. CODE §§ 17.41 ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE TEXAS SUBCLASS

138.    Plaintiff Hopkins re-alleges and incorporate all other factual allegations set forth in this Complaint.

139.    The Texas Deceptive Trade Practices Act ("Texas DTPA"), Texas Business & Commerce Code §§ 17.41 *et seq.*, prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce and any unconscionable action or course of action.

140.    The Texas DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44.

141.    Plaintiff Hopkins is a "consumer" under Tex. Bus. & Com. Code § 17.45(4). The 360 Savings Account Disclosures refer to CONA's "services" to accountholders, including Electronic Fund Transfer (EFT) "services," a Mobile Deposit "service," and Automatic Clearing House (ACH) External Transfer transactions.

142.    Defendants' actions constitute "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6).

143.    As described above, while engaging in trade or commerce within the State of Texas during the time period relevant hereto, Defendants:

      a.    Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360

Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.  Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

c.  Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

144.  The aforesaid methods, acts, and practices constitute false, misleading, or deceptive acts or practices in the conduct of any trade or commerce in violation of the Texas DTPA, including, but not limited to, the following:

a.  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" (Tex. Bus. & Com. Code § 17.46(b)(5));

b. "advertising goods or services with intent not to sell them as advertised" (*id.* § 17.46(b)(9));

c. "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.* § 17.46(b)(12)); and

d. "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" (*id.* § 17.46(b)(24)).

145. Defendants' conduct also violates the Texas DTPA's prohibition on "any unconscionable action or course of action by any person" that causes damages to a consumer (Tex. Bus. & Com. Code § 17.50(a)(3)).

146. Plaintiff Hopkins, on behalf of himself and the Texas Subclass, is entitled to seek economic damages, three times economic damages, costs, attorneys' fees, injunctive relief, and any other relief which the Court deems proper.

147. Pursuant to Section 17.505 of the Texas DTPA, 60 days' written notice is rendered impracticable by reason of the necessity of filing this petition in order to prevent the potential expiration of the statute of limitations. Nevertheless, pursuant to Section 17.505 of the Texas DTPA, Plaintiff Hopkins is providing written notice to Defendants of the allegations in this Complaint and the amount of his damages and expenses incurred. Defendants are hereby placed on notice for the reasons set forth in the DTPA Notice and this Complaint that Plaintiff Hopkins demands restitution and/or damages, on behalf of himself and persons similarly situated, pursuant to the Texas DTPA.

## COUNT VI

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349

## AGAINST ALL DEFENDANTS

## ON BEHALF OF THE NEW YORK SUBCLASS

148.    Plaintiffs Wright and Brenner re-allege and incorporate all other factual allegations set forth in this Complaint.

149.    New York Gen. Bus. Law § 349(a) ("New York G.B.L. § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

150.    As described above, while engaging in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto, Defendants:

   a.    Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

   b.    Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

   c.    Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

151. The foregoing deceptive acts and practices were directed at consumers.

152. As a result of Defendants' false, misleading, and deceptive misrepresentations and omissions, Plaintiffs Wright and Brenner and the members of the New York Subclass have suffered and continue to suffer economic injury.

153. Plaintiffs Wright and Brenner and members of the New York Subclass suffered an ascertainable loss caused by Capital One's misrepresentations.

154. On behalf of themselves and other members of the New York Sublass, Plaintiffs Wright and Brenner seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three-times actual damages, and reasonable attorneys' fees.

## COUNT VII

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. §56:8-1, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE NEW JERSEY SUBCLASS

155. Plaintiff Zawacki re-alleges and incorporates all other factual allegations set forth in this Complaint.

156. Defendants are each a "person" as defined in the New Jersey Consumer Fraud Act

("NJCFA"). N.J.S.A. § 56:8-1(d).

157.    The NJCFA states in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practices....

N.J.S.A. §56:8-2.

158.    The NJCFA further defines "merchandise" to include "services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. 56:8-1(c).

159.    As described above, while engaging in trade or commerce within the State of New Jersey during the time period relevant hereto, Defendants:

    a.    Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b.    Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

    c.    Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

    d.    Failed to correct representations that the 360 Savings online savings account was

Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

160.    Plaintiff Zawacki and the New Jersey Subclass have been and continue to be injured as a direct and proximate result of Capital One's violations of the NJCFA.

161.    Plaintiff Zawacki and the New Jersey Subclass are entitled to pursue a claim against Capital One pursuant to N.J.S.A. §§56:8-2.11, 56:8-2.12 and/or 56:8-19 for damages, treble damages, equitable relief, and attorney's fees and costs to remedy Capital One's violations of the NJCFA.

## COUNT VIII

### VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, FLA. STAT. § 501.204(1)

### AGAINST DEFENDANT CAPITAL ONE FINANCIAL CORP.

### ON BEHALF OF THE FLORIDA SUBCLASS

162.    Plaintiff Terrell re-alleges and incorporates all other factual allegations set forth in this Complaint.

163.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

164.    As described above, while engaging in trade or commerce within the State of Florida during the time period relevant hereto, COFC:

a. Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b. Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

c. Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.30% on its "high yield" 360 Performance Savings account).

165. Capital One's conduct, as alleged herein, was likely to deceive a consumer acting reasonably in the same circumstances, and that conduct caused actual damages to Plaintiff Terrell and members of the Florida Subclass.

166. Terrell, on behalf of herself and the Florida Subclass, seeks damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Fla. Stat. § 501.211 and § 501.2105.

## COUNT IX

## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. §§ 75-1, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE NORTH CAROLINA SUBCLASS

167.    Plaintiff Rossetti re-alleges and incorporates all other factual allegations set forth in this Complaint.

168.    The North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA") declares unlawful any "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

169.    Defendants' conduct as alleged herein is "in or affecting commerce" under N.C. Gen. Stat. § 75-1.1(a).

170.    As alleged herein, while engaging in trade or commerce within the State of North Carolina during the time period relevant hereto, Defendants:

   a.    Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

   b.    Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

60

c.  Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

171.  Each week that Capital One fails to pay good-faith interest payments on its 360 Savings accounts establishes a separate offense of the NC UDTPA pursuant to N.C. Gen. Stat. § 75-8.

172.  Plaintiff and the other members of the North Carolina Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the NC UDTPA.

173.  Plaintiff and the members of the North Carolina Subclass are entitled to seek actual damages and treble damages pursuant to N.C. Gen. Stat. § 75-16.

174.  Plaintiff and the other members of the North Carolina Subclass are also entitled to seek attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT X

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT, MD. CODE ANN., COM. LAW §§13-101, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE MARYLAND SUBCLASS

175.  Plaintiff Molloy re-alleges and incorporates all other factual allegations set forth in

this Complaint.

176.    Defendants are each a "person" as defined in the Maryland Consumer Protection Act ("MCPA"). Md. Code Ann., Com. Law § 13-101(h).

177.    "The provisions of [the MCPA] apply to the subject matter of a consumer contract as defined in § 22-102 of this article in the same manner they apply to consumer goods and consumer services." Md. Code Ann., Com. Law § 13-101.1.

178.    As described above, while engaging in trade or commerce within the State of Maryland during the time period relevant hereto, Defendants:

a.  Unfairly and deceptively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.  Failed to inform customers that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers;

c.  Failed to disclose to its existing 360 Savings accountholders that a new, materially identical online savings account product was available, namely the 360 Performance Savings account; and

d.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360

Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

179.    The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by the MCPA, including, but not limited to, the following:

    a.   Making a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," *id*. § 13-301(1);

    b.   "representat[ing] that … [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have," *id*. 13-301(2)(i);

    c.   "representing that … [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not," *id*. § 13-301(2)(iv);

    d.   "[f]ail[ing] to state a material fact if the failure deceives or tends to deceive," *id*. § 13-301(3);

    e.   "advertis[ing] or offer of … consumer services … [w]ithout intent to sell, lease, or rent them as advertised or offered," *id*. § 13-301(5)(i); and

    f.   "deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service," *id*. § 13-301(9)(i).

180.    Plaintiff Molloy and the other members of the Maryland Class have been and

continue to be injured as a direct and proximate result of Defendants' violations of the MCPA.

181.     Plaintiff Molloy is entitled to pursue a claim on behalf of himself and the Maryland Subclass against Defendants under Md. Code Ann., Com. Law § 13-408 for damages and attorney's fees and costs to remedy Capital One's violations of the MCPA.

### COUNT XI

### BREACH OF QUASI-CONTRACT AND UNJUST ENRICHMENT

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CLASS

182.     Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

183.     Plaintiffs and the Class conferred a benefit on Capital One by maintaining their cash in 360 Savings accounts paying less interest than Plaintiffs and the Class should have rightfully received based on Defendant's conduct as alleged herein. Defendant knowingly retained this deposited cash and unjustly profited from the lower interest rate it paid to Plaintiffs and the Class.

184.     In the absence of a contract, Plaintiffs and the Class have no adequate remedy at law.

185.     Defendants' unjust enrichment can be remedied by ordering Defendants to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, all proceeds received from Plaintiffs and the Class as a result of the unlawful and/or inequitable conduct described herein.

## COUNT XII

### PROMISSORY ESTOPPEL

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CALIFORNIA, TEXAS, NEW YORK, NEW JERSEY, FLORIDA, AND MARYLAND SUBCLASSES

186.    Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

187.    Defendants promised that the 360 Savings account would be "high interest" and would pay a "great rate," which promises were designed to induce customers to deposit funds in 360 Savings accounts and/or keep funds in 360 Savings accounts. Defendants then failed to disclose to its existing 360 Savings accountholders that Defendants had created a new, materially identical, similarly named online savings account, namely the 360 Performance Savings account, which paid a higher interest rate than the 360 Savings account.

188.    In reliance on Defendants' conduct as alleged herein, Plaintiffs (and Subclass members) took action by depositing their funds in 360 Savings accounts, and refrained from taking action by leaving their funds in 360 Savings accounts.

189.    Class members are presumed to have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Savings account and the 360 Performance Savings account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

190.    Injustice can be avoided only by enforcing Defendants' promise.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court award the following relief:

191.    Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

192.    Declare Defendants' conduct unlawful;

193.    Enjoin Defendants from the unlawful conduct alleged herein, including by ordering Defendants to convert all 360 Savings accounts into 360 Performance Savings accounts, and/or ordering Defendants to immediately provide variable, high-yield interest rates to 360 Savings accountholders commensurate with the rates offered on the 360 Performance Savings account;

194.    Award Plaintiffs and the Class (and Subclasses) damages under common law and/or by statute, including treble and/or punitive damages;

195.    Award Plaintiffs and the Class (and Subclasses) restitution and/or disgorgement;

196.    Award Plaintiffs attorney's fees, costs, and pre-judgment and post-judgment interest; and

197.    Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, and the Class and Subclass members, demand a trial by jury on all triable issues.

Dated: February 26, 2024                    Respectfully submitted,

By: /s/ Matthew B. Kaplan
Matthew B. Kaplan VSB #51027
The Kaplan Law Firm
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Local Counsel for Plaintiffs and the Putative Class and Subclasses*

Chet B. Waldman (*pro hac vice* forthcoming)
Philip M. Black (*pro hac vice* forthcoming)
Timothy D. Brennan (*pro hac vice* forthcoming)
WOLF POPPER LLP
845 Third Ave.
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com
pblack@wolfpopper.com
tbrennan@wolfpopper.com

*Attorneys for Plaintiffs and the Putative Class and Subclasses*